IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-610

_____

FILED

**May 5, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE K.A., JR., N.A. and J.B

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Maryclaire Akers, Judge
Civil Action Nos. 21-JA-425, 21-JA-426, 21-JA-427

AFFIRMED, IN PART, REVERSED, IN PART, AND REMANDED WITH
DIRECTIONS
_____

Submitted: March 4, 2025
Filed: May 5, 2025

Sandra K. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Counsel for the Petitioner

John B. McCuskey, Esq.
Attorney General
Heather L. Olcott, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Department of Human
Services

Jennifer R. Victor, Esq.
Victor & Victor, LLP
Charleston, West Virginia
Guardian ad Litem

JUSTICE TRUMP delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.      We review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard.

2.      Whether a circuit court has subject-matter jurisdiction is an issue of law reviewed *de novo*.

3.      "For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syllabus Point 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

4.      "The mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an 'abused child' or 'neglected child' as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by

i

the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named." Syllabus Point 3, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023).

5. "Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syllabus Point 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.*, 158 W. Va. 492, 211 S.E.2d 705 (1975).

**TRUMP, Justice:**

The Department of Health and Human Resources (predecessor agency to the current Department of Human Services)[1] filed a petition alleging that S.N.M.[2] abused and neglected her three children, K.A, Jr., N.A, and J.B. The circuit court found abuse and neglect had occurred and terminated S.N.M.'s parental rights as to all three children. S.N.M. appealed, and we reversed and remanded with directions to the circuit court to determine if the circuit court had subject-matter jurisdiction as to J.B. and to rule on S.N.M.'s motion for a post-adjudicatory improvement period.

After remand, the circuit court denied S.N.M's motion for a post-adjudicatory improvement period and exercised subject-matter jurisdiction by terminating S.N.M's parental rights to J.B. S.N.M now appeals again arguing that (1) her parental rights should not have been terminated without the granting of a post-adjudicatory improvement period as to her children, (2) the circuit court had no jurisdiction over the child, J.B., pursuant to the rulings in *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023) ; and (3) even if the circuit court had subject-matter jurisdiction as to J.B., S.N.M.'s parental rights should not have been terminated as to that child because a less restrictive alternative to termination existed.

---

[1]We refer to the Department of Health and Human Resources as the Department of Human Services (or the DHS) throughout this opinion.

[2]Because of the sensitive nature of this case, we use initials to avoid identifying the juveniles involved. *See* W. Va. R. App. Pro. 40(e).

After carefully considering the written submissions of the parties and the Guardian ad Litem, hearing oral argument, and reviewing the pertinent legal authority, we find that the circuit court did not abuse its discretion in denying S.N.M. a post-adjudicatory improvement period as to K.A., Jr., and N.A. Thus, as to K.A., Jr., and N.A. we affirm the circuit court. However, because we find that based on the record before us the circuit court lacked subject-matter jurisdiction to terminate S.N.M.'s parental rights to J.B., we reverse the circuit court and remand with directions to dismiss the petition as to J.B.

## I.      Facts and Procedural Background

On July 26, 2021, the DHS filed a petition alleging that Petitioner mother, S.N.M, abused and neglected her children, J.B, K.A., Jr., and N.A. The petition indicates that a Child Protective Services worker interviewed K.A., Jr., and N.A., but not J.B. While the petition alleged that all three children lived at the same address, the petition also acknowledges that J.B. was in a legal guardianship with her grandmother, R.B. The petition alleged "the children" were abused and neglected but did not make any specific allegations as to J.B., although the petition alleged that K.A., Jr. had magic marker on his cheeks for multiple days and that N.A. had a severe case of head lice and was so dirty that she would "dig at her crotch."

The petition also alleged that the father of K.A., Jr., and N.A. (K.A., Sr.)[3] hit S.N.M., choked her, and called her names like "whore" in front of the children. The petition further alleged that there was a Domestic Violence Protective Order against K.A., Sr. It was also alleged in the petition that N.A. "sees her dad and mom fight all the time and it scares her" and that N.A. will cry when K.A., Sr. hits S.N.M because the domestic violence makes S.N.M cry. Finally, the petition alleged drug use by S.N.M, K.A., Sr. and at least one other caretaker.

S.N.M waived her right to a preliminary hearing. The circuit court ordered parenting and adult life skills for S.N.M. and ordered S.N.M. to undergo random drug screenings.

At an adjudicatory hearing held on January 25, 2022, S.N.M. stipulated to domestic violence in front of the children as alleged in the petition. Accordingly, the circuit court adjudicated her an abusive and neglectful parent by written order entered that same day. The circuit court also ordered S.N.M. to undertake drug treatment as recommended by her providers.

On or about April 4, 2022, S.N.M. requested, in writing, a post-adjudicatory improvement period. The circuit court held the request in abeyance and did not rule on it.

---

[3]J.B. has a different father—J.A.B.

Without ruling on the motion for an improvement period, the circuit court terminated S.N.M.'s parental rights to all three children.

The dispositional hearing occurred on May 2, 2022. Testifying at this hearing was Child Protective Services senior case manager Patrick Breeden. Mr. Breeden testified to his recommendation that S.N.M.'s parental rights be terminated because of S.N.M.'s ongoing drug use[4] and continued association with K.A., Sr.,[5] despite the history of domestic violence between the two.[6] He further testified that these factors led him to conclude that there was no reasonable likelihood that the situation that caused the filing of the petition could be corrected in the near future.

At this same hearing, S.N.M. testified to attending Narcotics Anonymous or Alcoholics Anonymous meetings once a week but testified that she had not participated in any sort of substance abuse rehabilitation program and that she did not think she needed to attend such a program. She testified that the positive test screens for THC Delta 9 were due to a mix up in that she believed she had been taking THC Delta 8, which she claimed was

---

[4]S.N.M. tested positive for THC Delta 9 on March 3, March 9, March 14, and March 15, 2022. S.N.M. also tested positive for methamphetamine on April 15, 2022. It appears that S.N.M. additionally tested positive for methamphetamine on both September 13, 2021, and September 22, 2021.

[5]S.N.M. divorced K.A., Sr. on November 15, 2021.

[6]In one incident, S.N.M. stabbed K.A., Sr. Additionally, S.N.M. filed a petition for a domestic violence protective order against K.A., Sr., but it was dismissed when neither party appeared. S.N.M. also admitted to stabbing a different man whom she was visiting when he attempted to stop her from leaving his residence.

a legal substance in West Virginia. She also testified that her positive methamphetamine screen in April of 2022 was due to a friend smoking the drug in S.N.M.'s house without permission, causing an involuntary second-hand inhalation by S.N.M. The purpose of this friend's visit was to discuss with S.N.M. the friend's recent robbery of a church. Later, Kanawha County Sheriff's Department deputies appeared at S.N.M.'s residence to enlist S.N.M.'s help in apprehending the friend. Additionally, S.N.M. was arrested in November of 2021 for a charge of obstruction for fleeing. S.N.M. was a passenger in a vehicle being driven by a boyfriend traveling at a high rate of speed and passing vehicles on the double yellow line. The flight ended only after the boyfriend drove his vehicle into a creek.

The circuit court entered a dispositional order on May 2, 2022. This order terminated S.N.M.'s parental rights to J.B., K.A., Jr., and N.A.[7]

S.N.M. appealed the May 2, 2022, dispositional order to this Court. *In re K.A.*, No. 22-0426, 2023 WL 3973423 (W. Va. June 13, 2023) (memorandum decision). We concluded that the circuit court's order was insufficient on several grounds. We initially explained that:

> Although not raised as a specific assignment of error, the record shows that J.B. was placed in a legal guardianship prior to the filing of the petition and that the DHHR failed to include any specific allegations in the petition that J.B. was exposed to domestic violence. As we recently explained,

---

[7]The parental rights of J.A.B. and K.A., Sr. were also terminated in this order, but they did not appeal. Consequently, in this appeal, we deal only with matters relating to S.N.M.

[t]he mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to each child so named.

Syl. Pt. 3, *In re B.V.*, —— W. Va. ——, 886 S.E.2d 364, 2023 WL 2769431 (Jan. 10, 2023). Here, the court made no findings at all in regard to how J.B. was abused and/or neglected. Instead, it simply noted that petitioner stipulated to "domestic violence." While this stipulation may be sufficient in regard to K.A. and N.A., the two children in the home, the circuit court's failure to include any specific findings as to how the stipulation applied to J.B. is fatal. In accordance with *B.V.* and the requirement that specific findings as to how each child is either abused and/or neglected are necessary in order for a court to exercise subject matter jurisdiction, the circuit court's January 25, 2022, adjudicatory order must be vacated, in part, as it pertains to J.B. only, and the matter must be remanded for the court to enter a new adjudicatory order satisfying these requirements in regard to J.B.

*In re K.A.*, No. 22-0426, 2023 WL 3973423, at \*2 (W. Va. June 13, 2023) (memorandum decision) (footnote omitted). We next explained:

Finally, we are unable to properly address petitioner's assignment of error concerning the termination of her parental rights because this ruling was based on conclusory "findings" set forth in the court's dispositional order, which consisted only of checked boxes next to the statutory language it believed was applicable. In discussing the sufficiency of dispositional orders in abuse and neglect proceedings, we previously explained that

6

> [p]rocedurally, these various directives [set forth in the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes] also provide the necessary framework for appellate review of a circuit court's action. Where a lower court has not shown compliance with these requirements in a final order, and such cannot be readily gleaned by this Court from the record, the laudable and indispensable goal of proper appellate review is thwarted.

*[In re] Edward B.*, 210 W. Va. [621,] 632, 558 S.E.2d [620,] 631 (2001). We further explained that "[a]dequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Id.* (citation omitted). Additionally, we have previously held that conclusory declarations are insufficient for termination of parental rights.

> Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § [49-4-604(c)(6)] on the record or in the order, the order is inadequate.

*Edward B.*, 210 W. Va. at 624, 558 S.E.2d at 623, Syl. Pt. 4, in part. Because the circuit court failed to provide sufficient findings on the issues necessary for termination of petitioner's parental rights to the children, we must vacate the dispositional order and remand the matter for the entry of a new order containing detailed findings of fact and conclusions of law specific to petitioner in support of the dispositional alternative the court finds appropriate.

*Id.* at *3 (footnote omitted). We concluded with detailed instructions to the circuit court:

> For the foregoing reasons, we vacate, in part, the circuit court's January 25, 2022, adjudicatory order as it relates to J.B. only; vacate, in part, the May 2, 2022, dispositional order with respect to all rulings involving petitioner mother S.M.; and remand this matter to the circuit court for further proceedings, including but not limited to the entry of an order setting out the

7

requisite findings as to whether J.B., the child in a legal guardianship, met the statutory definitions of an abused or neglected child, based on the evidence previously adduced. *See* W. Va. Code § 49-1-201. To the extent that evidence does not support such a determination, we further direct the circuit court to undertake such proceedings, consistent with this memorandum decision, as may be necessary to ascertain whether J.B. met the statutory definitions of an abused or neglected child, so that the circuit court might properly exercise jurisdiction. Additionally, we remand with instructions for the court to enter a new dispositional order addressing petitioner's motion for a post-adjudicatory improvement period and the termination of petitioner's parental rights consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

*Id*. (footnote omitted).

After remand, the circuit court did not conduct any additional evidentiary hearings but entered an amended adjudicatory order and an amended dispositional order, both on September 22, 2023.

In the amended adjudicatory order, the circuit court found that J.B.'s paternal grandmother (R.B.) had sought and obtained a legal guardianship of J.B. because J.A.B. and S.N.M. had a history of substance abuse, that there were filthy living conditions in S.N.M.'s house, that S.N.M. was dating a child molester, and J.B. had been sexually abused by a neighbor. The circuit court further found that "[J.B.] visited the home of her mother on occasion where she was directly subjected to the same intolerable conditions as her half-siblings. [J.B.] was subjected to child abuse and neglect in the home of [S.N.M.] and [K.A., Sr.] because of the uninhabitable living conditions in the home, domestic violence, and

8

caregivers impaired by substance abuse." The circuit court also found that "[t]he petition contained specific allegations of child abuse and neglect committed against [J.B.] by adult respondents [S.N.M.], [K.A., Sr.], and [J.A.B.]."

In the amended dispositional order, the circuit court found that while S.N.M. participated in most of the services offered, such participation failed to benefit S.N.M. sufficiently. The circuit court found that S.N.M. tested positive for illicit substances throughout the entirety of the case, even while denying drug use and offering improbable excuses for the positive test results. The circuit court also found that S.N.M. "failed to participate in either residential or outpatient substance abuse treatment, although she did claim to participate in some AA or NA meetings. [S.N.M.] denied needing substance abuse treatment." The circuit court concluded that S.N.M. "failed to acknowledge or take responsibility for her substance abuse or the negative impact it had on her children." The circuit court concluded that S.N.M. continued to associate with violent domestic partners and drug users, continued to place herself in dangerous situations, and showed no insight or changes in her attitudes or behaviors despite the obvious negative ramifications and legal entanglements growing out of such conduct. The circuit court found that S.N.M.'s drug problems seriously impaired her parenting skills, and that she did not undertake appropriate treatment to deal with the issue. The circuit court found in its amended dispositional order that S.N.M. failed to demonstrate that she was likely to participate in the terms and conditions of a post-adjudicatory improvement period and denied a post-adjudicatory improvement period.

9

S.N.M. again appeals, this time arguing that (1) the circuit court lacked subject-matter jurisdiction to terminate her parental rights to J.B.; (2) the circuit court should not have terminated her parental rights to J.B. because a less restrictive alternative to termination existed; and (3) the circuit court erred in denying her a post-adjudicatory improvement period.

## II.     Standard of Review

S.N.M. contends that the circuit court erred in denying her a post-adjudicatory improvement period. Because "it is within the [circuit] court's discretion to grant an improvement period[,]" Syl. Pt. 2, in part, *In re Lacey P.*, 189 W. Va. 580, 433 S.E.2d 518 (1993), we review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard. "[W]ithin the parameters of statutory authority, a circuit court is authorized to rule on a motion for a post-adjudicatory improvement period, and its decision is reviewed under an abuse of discretion standard." *In re D.M.*, 237 W. Va. 713, 718, 790 S.E.2d 933, 938 (2016).

In this case, we must also determine if the circuit court properly exercised subject-matter jurisdiction as to J.B.  Whether a circuit court has subject-matter jurisdiction is an issue of law reviewed *de novo*. *See, e.g.*, *State ex rel. W. Va. Sec. Sch. Activities Comm'n v. Cuomo*, 247 W. Va. 324, 331, 880 S.E.2d 46, 53 (2022); *Cortez v. Murray*, No. 17-0662, 2018 WL 2447285, at *4 n.5 (W. Va. May 31, 2018) (memorandum decision).

10

Having set forth the standards which govern our review of this appeal, we proceed to address the issues raised by S.N.M.

## III. Discussion

*A. The denial of a post-adjudicatory improvement period as to K.A., Jr., and N.A.*

After the case was appealed and remanded by this Court, the motion for a post-adjudicatory improvement period was denied by the circuit court. S.N.M. contends that the circuit court erred in terminating her parental rights to K.A., Jr., and N.A. without affording her a post-adjudicatory improvement period.[8] Upon our review, we do not believe that the circuit court abused its discretion in denying S.N.M. a post-adjudicatory improvement period.

West Virginia Code § 49-4-610(2) (2015) permits a circuit court to grant a post-adjudicatory improvement period when the respondent files a written motion requesting the improvement period and "demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]" "The improvement period is granted to allow the parent an opportunity to remedy the existing problems[,]" *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990), and thereby "to facilitate the reunification of families whenever that

---

[8]We limit our discussion herein to K.A., Jr., and N.A. because we address J.B.'s disposition separately below.

11

reunification is in the best interests of the children involved." *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 258, 470 S.E.2d 205, 212 (1996). However, "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d 865, 874 (1996). Consequently, "when a parent cannot demonstrate that he/she will be able to correct the conditions of abuse and/or neglect with which he/she has been charged, an improvement period need not be awarded before the circuit court may terminate the offending parent's parental rights." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000).

The circuit court found in its amended dispositional order of September 22, 2023, that S.N.M. failed to demonstrate that she was likely to participate in the terms and conditions of a post-adjudicatory improvement period, and the circuit court denied a post-adjudicatory improvement period on that basis. We do not find that the circuit court abused its discretion in denying a post-adjudicatory improvement period.

The circuit court found that after the filing of the petition, S.N.M. continued to associate with violent domestic partners and drug users, continued to place herself in dangerous situations, and showed no insight or changes in her attitudes or behaviors despite

12

the obvious negative ramifications and legal entanglements growing out of such conduct. The circuit court also found that S.N.M.'s drug problems seriously impaired her parenting skills, and that she did not undertake appropriate treatment to deal with the issue.

Additionally, the circuit court found that S.N.M. tested positively for illegal substances throughout the case but S.N.M. denied drug use and offered dubious excuses for the positive test results. The circuit court further found that S.N.M. "failed to participate in either residential or outpatient substance abuse treatment, although she did claim to participate in some AA or NA meetings. [S.N.M.] denied needing substance abuse treatment." The circuit court concluded that S.N.M. "failed to acknowledge or take responsibility for her substance abuse or the negative impact it had on her children." Given the findings made by the circuit court—findings sustained by evidence of record—we conclude that the circuit court acted within its discretion in denying S.N.M. a post-adjudicatory improvement period. We therefore affirm the decision of the circuit court to deny S.N.M. a post-adjudicatory improvement period as to K.A., Jr., and N.A.

*B. Subject-matter jurisdiction regarding J.B.*

S.N.M. claims that the circuit court lacked subject-matter jurisdiction to terminate her parental rights to J.B. We have held:

> "For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a

child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition."

Syl. Pt. 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022). We have further explained,

> The mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.

Syl. Pt. 3, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023).

The DHS specifically agrees in its brief to this Court that "[t]he circuit court's new adjudicatory order fails to establish subject matter jurisdiction[.]" While we are not bound by the DHS's confession of error and must independently review the record to determine if the confession of error is correct, *Freeland v. Marshall*, 249 W. Va. 151, 160, 895 S.E.2d 6, 15 (2023),[9] our independent review reveals that the DHS's confession of

---

[9]We undertake the independent review acknowledging that "[c]onfessions of error are, of course, entitled to and given great weight[.]" *Sibron v. New York*, 392 U.S. 40, 58 (1968).

14

error is correct and that the circuit court lacked subject-matter jurisdiction to terminate S.N.M.'s parental rights as to the child J.B.

West Virginia Code § 49-4-601(i) (2019) provides, in pertinent part:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

In S.N.M.'s prior appeal, neither the adjudicatory hearing transcript nor stipulation were available to this Court for review. We remanded to the circuit court with the option to enter appropriate findings as to J.B. based on the evidence it had already taken, or to hold a hearing for the DHS to present additional evidence. The circuit court did not hold a new hearing, and we see nothing in the record, nor is any argument made that DHS requested to present additional evidence and that the adjudicatory order was entered prematurely, or that DHS had evidence in hand to support an exercise of jurisdiction over J.B. that the circuit court did not or would not consider.

Instead, the amended adjudicatory order provides that R.B. sought a guardianship of J.B. because J.A.B. and S.N.M. had a history of substance abuse, because of the filthy living conditions in S.N.M.'s home, because S.N.M. was dating a child molester, and because J.B. had been sexually abused by a neighbor. As acknowledged by

15

the DHS, the amended adjudicatory order, however, does not contain a finding of fact as to when R.B. obtained guardianship over J.B. The DHS correctly observes that "[w]ithout a timeframe, there is no way to know whether these events occurred days before the petition was filed or five years before the petition was filed. Therefore, without this information, a determination cannot be made as to whether these conditions existed at the time of the filing of the petition, as required by the statute."

Additionally, the circuit court's amended adjudicatory order found that J.B. visited S.N.M.'s home "on occasion" where she was directly subjected to the same intolerable conditions as her half-siblings. The amended adjudicatory order furthermore found that J.B. was subjected to child abuse and neglect in the home of S.N.M. and K.A., Sr. "because of the uninhabitable living conditions in the home, domestic violence, and caregivers impaired by substance abuse." However, the record before us contains no evidence of how often or when these "occasional visits" might have occurred. Moreover, DHS admits that no evidence was produced at the adjudicatory hearing to substantiate these findings.[10]

---

[10]The DHS posits that the circuit court may have reached these findings based upon allegations contained in the petition. It appears that this is the case. But, while jurisdictional allegations are necessary, they are not alone sufficient, to establish subject-matter jurisdiction. "[A] circuit court's order cannot legitimately be based on speculation or divorced from the evidence in the record." *Phares v. Brooks*, 214 W. Va. 442, 446, 590 S.E.2d 370, 374 (2003) (per curiam). "It is well settled that allegations are not evidence[.]" *DeSanto v. Grahn,* 362 So. 3d 247, 249 (Fla. Dist. Ct. App. 2023). Consequently, the circuit court could not properly rely on the allegations of the petition as evidence of the facts

16

The record, just as before the matter was remanded, is devoid of evidence sufficient to support findings that J.B. had contact with S.N.M. or that she was exposed to the conditions for which S.N.M. was adjudicated as to K.A., Jr., and N.A. Further, the findings related to the circumstances that prompted the filing of the guardianship cannot be used to support subject-matter jurisdiction over J.B. in the underlying abuse and neglect case where there is no temporal proximity apparent from the record.

Because the circuit court cannot establish subject-matter jurisdiction of J.B. based on conditions that preceded the filing of the petition and there is no record evidence to support that J.B. was exposed to the same conditions as K.A., Jr., and N.A., we glean no valid basis that J.B. meets the statutory definitions of an abused or neglected child, which is a prerequisite to the court's continued jurisdiction over the case to proceed to disposition. *See* Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing before a court can begin to make any of the dispositional alternatives under West Virginia Code § [49-4-604], it must hold [an adjudicatory hearing], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case."); *accord* Syl. Pt. 3, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019).

---

asserted therein. *Cf.* W. Va. Code § 49-4-601(k) (2019) ("The petition may not be taken as confessed.").

The DHS asks for another remand of this case to address subject-matter jurisdiction. We do not think another remand is warranted. In the instant case, the circuit court was given two opportunities to find subject-matter jurisdiction and its findings did not establish jurisdiction either time. The DHS offered no evidence establishing jurisdiction to the circuit court, and it offers nothing to this Court demonstrating that the DHS could satisfy its burden if we remand yet again. We are, therefore, constrained to find that the circuit court lacked subject-matter jurisdiction concerning J.B. "Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syl. Pt. 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc*., 158 W. Va. 492, 211 S.E.2d 705 (1975).

Because we find that the circuit court lacked subject-matter jurisdiction to terminate S.N.M.'s parental rights to J.B., we reverse and remand this case to the circuit court with directions to enter an order dismissing the petition against S.N.M. concerning J.B.[11]  This opinion does not preclude the DHS from filing a petition regarding J.B. if there

---

[11]Because the circuit court lacked subject-matter jurisdiction to terminate S.N.M.'s parental rights to J.B., we do not address S.N.M.'s assertion that less restrictive alternatives to termination should have been applied to J.B. *See In re Z.H*., 245 W. Va. 456, 472-73 n.23, 859 S.E.2d 399, 415-16 n.23 (2021) ("Because the circuit court's lack of subject matter jurisdiction is dispositive of this appeal, we do not address the petitioner's first assignment of error where she argues that the circuit court should have imposed a disposition other than the full termination of her rights.").

is evidence of abuse or neglect or both as to J.B. that has occurred or may occur in the future.

## IV.    Conclusion

For the foregoing reasons, we affirm the circuit court's September 22, 2023, dispositional order denying S.N.M. a post-adjudicatory improvement period and terminating parental rights as to K.A., Jr., and N.A., but we reverse the circuit court's September 22, 2023, dispositional order as to J.B. and remand this case to the circuit court with directions to dismiss the petition against S.N.M. regarding that child for lack of subject-matter jurisdiction.

Affirmed, in part, reversed, in part, and remanded with directions.